UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCEAU BOISJOLY, <br>    *Plaintiff*, <br> v. <br> AARON MANOR, INC. & RYDERS HEALTH MANAGEMENT, INC., <br>    *Defendants*. | No. 3:21-cv-01621-MPS |

## RULING ON DEFENDANT'S PARTIAL MOTION TO DISMISS

Marceau Boisjoly ("Boisjoly" or "Plaintiff"), has sued Aaron Manor, Inc. ("Aaron" or "Defendant") and Ryders Health Management, Inc. ("Ryders" or "Defendant"), alleging in Counts Ten and Eleven of the amended complaint that Ryders discriminated against her in violation of the Federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d),[1] and the Connecticut Equal Pay Act ("CEPA"), Conn. Gen. Stat. § 31-75(a), § 31-76(b). ECF No. 16. Ryders has moved to dismiss Counts Ten and Eleven for failure to state a claim on which relief can be granted. ECF No. 18.

For the reasons that follow, I DENY Ryder's motion to dismiss (ECF No. 18).

---

[1] 29 U.S.C. § 206(d)(1) provides:
   No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

1

I.  **FACTUAL BACKGROUND**

Boisjoly alleges the following facts, which are taken as true for the purposes of evaluating Ryder's motion to dismiss.

Boisjoly is female and was born in 1954. ECF No. 16 ¶¶ 17, 18. She stopped working for Defendants on May 12, 2020. *Id*. ¶ 28. Prior to the end of this employment relationship, she "had been employed by Defendants for over twenty (20) years," and was most recently employed as the "Director of Food Services at Aaron Manor located in Chester, Connecticut." *Id*. ¶ 16. Aaron Manor is a skilled nursing and rehabilitation center. *Id*. ¶ 10.

"Ryders is a management company for skilled Nursing & Rehabilitation Centers (and other health services) including Aaron Manor, Inc." *Id.* "Ryders is a central administrative unit that hires employees, sets wages, and assigns the location of employment for its employees." *Id.* ¶¶ 125, 130. "In December 2015, Joe Colaci was hired by Ryders as the Chief Operating Officer." *Id.* ¶ 21. "Colaci was responsible for the oversight of operations, budgeting and purchasing at Aaron Manor, as well as Ryders' seven (7) other Nursing & Rehabilitation Facilities." *Id.* "Colaci possessed ultimate decision-making authority related to hiring and terminating employees, as well as setting the salaries of the employees at the Nursing & Rehabilitation Centers that Ryders managed." *Id.* ¶ 22.

Ryders paid Boisjoly wages and benefits that were less than those paid to one or more employees of the opposite sex who were Directors of Food Services within other Ryders facilities and had less tenure, seniority and/or experience that Boisjoly. Id. ¶¶ 23, 24, 124, 129. Across the Ryders facilities, "[t]he number of residents varied from facility to facility." *Id.* ¶ 40. "[A]lthough her male counterparts managed larger budgets related to the provision of food services because their facilities had additional beds, her male counterparts were supported by

more staff and dietary workers." *Id.* ¶ 42. "[Boisjoly] worked the same, if not more hours than her male counterparts who received higher salaries than her." *Id.* ¶ 41.

"[Boisjoly] was also required to work one day per week performing functions as a Cook at Aaron Manor." *Id.* ¶ 29. "[T]his was not an essential requirement of [Boisjoly's] position as a Director of Food Services." *Id.* "Colaci told [Boisjoly] that every Director of Food Services would be required to work as a Cook one day per week" *Id.* ¶ 30. But Boisjoly later learned that male Directors of Food Services "were not burdened with the additional responsibilities of working as a Cook one day a week." *Id.* ¶ 31. The only other Director of Foods Services required to work as a Cook was also female. *Id.* Boisjoly's salary and job title did not change after being required to work as a Cook. *Id.* ¶¶ 32, 33. "Rather, working as a Cook increased [Boisjoly's] job responsibilities." *Id.* ¶ 35.

"[Boisjoly's] essential job functions as Director of Food Services were not reduced, nor were they changed once she was required to work one day as a Cook." *Id.* ¶ 34. "When [Boisjoly] worked as a Cook, she was still in a supervisory role." *Id.* ¶ 38. "Additionally, on the days that she would cook, [Boisjoly] was still responsible for placing orders and meeting with the center's residents." *Id.* "[Boisjoly] was required to complete all of the essential job functions as Director of Food Services in addition to cooking one day a week." *Id.* ¶ 36. The essential functions of Boisjoly's role were "substantially equal to those of her male counterparts" and involved: "placing food orders and ensuring that such orders remained within the budget; staffing the food service department; scheduling food services workers; coordinating with the Director of Nursing, Medical Director, Registered Dietician, and Administrator in implementing the provision of food services to the residents in the facility; and ensuring that meals and menus were implemented in compliance with state, federal and local regulations . . . " *Id.* ¶ 39.

II. **PROCEDURAL HISTORY**

On December 6, 2021, Boisjoly filed this lawsuit against Aaron and Ryders. ECF No. 1. On March 11, 2022, Aaron and Ryders filed a motion to dismiss Counts Ten and Eleven of the complaint. ECF No. 11. In response, Boisjoly filed an amended complaint on April 1, 2022. ECF No. 16. The amended complaint only charged Defendant Ryders with Counts Ten and Eleven. *Id*. I denied the original motion to dismiss as moot. ECF No. 17. Ryders then filed a motion to dismiss Counts Ten and Eleven of the amended complaint on April 14, 2022 for failure to state a claim upon which relief may be granted. ECF No. 18.

III. **STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. Appx 41, 41 (2d Cir. 2017) (quoting *Ashcroft*, 556 U.S. at 678 (citations and internal quotation marks omitted)). The Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. See *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

IV. **DISCUSSION**

Ryders seeks dismissal of Boisjoly's EPA claim, arguing that Boisjoly has failed to plead facts suggesting that her job as Director of Food Services at Aaron Manor and the jobs held by Directors of Food Services at other Ryders facilities required substantially equal skill, effort, and

responsibility. ECF No. 19 at 8. Ryders also argues that Boisjoly has failed to plead facts showing that she worked at the same establishment as other Directors of Food Services. ECF No. 19 at 10. Ryders then argues that Boisjoly's CEPA claim should also be dismissed because the CEPA claim should be analyzed under the same standard as the EPA claim. ECF No 19 at 13. I discuss these three arguments in Sections A., B., and C. below.

A. "Substantially Equal" under the EPA

"The Equal Pay Act . . . prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)). "To prove a violation of the EPA, a plaintiff must first establish a prima facie case of discrimination by showing: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Id.* (internal citations and quotation marks omitted).

> While the equal work inquiry does not demand evidence that a plaintiff's job is "identical" to a higher–paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are "substantially equal." To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications.

*E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014) (internal citation omitted). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *Id.* at 254 (internal quotation marks and citations omitted). "At the

5

pleading stage ... a plausible EPA claim must include sufficient factual matter, accepted as true[,] to permit the reasonable inference that the relevant employees' job content was substantially equal" in order "to provide fair notice [to the defendant] of the basis for [the plaintiff's] claims." *Id*. at 256 (internal citations and quotation marks omitted).

Ryders argues that when Directors of Food Services manage facilities with substantially different numbers of beds, "no reasonable person would consider those two jobs to require 'equal skill, effort, and responsibility.'" ECF No. 19 at 8. Ryders states that "[t]he level of effort, planning, coordination and responsibility required at the larger facility necessarily makes the position fundamentally different from the position at the smaller facility." *Id.* at 8-9. Ryders also argues that the positions here were not substantially equal because Boisjoly had fewer supervisory responsibilities than other Directors of Food Services. *Id.* at 9. Ryders points out that the amended complaint alleges that Boisjoly managed a smaller budget than other Directors of Food Services, was supported by fewer staff and dietary workers, and worked at a facility that served a smaller patient population. *Id*. (citing ECF No. 16 ¶ 42). And Ryders argues that the requirement to cook once per week is further evidence that Boisjoly's position was different from that of other Directors of Food Services. *Id.* at 9-10.

When reasonable inferences are drawn from the factual allegations in the complaint, however, I find that the complaint plausibly alleges that the jobs involve equal skill, effort, and responsibility. Boisjoly acknowledges a difference in the scale of operations, but this alone is not dispositive. *See, e.g., Brewster v. Barnes*, 788 F.2d 985, 991 (4th Cir. 1986) (positions were substantially equal even though one entailed responsibility for more inmates). "Equal responsibility turns on 'the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation.'" *E.E.O.C.*, 768 F.3d at 255 (quoting 29 C.F.R

§ 1620.17(a)). Measuring differences in the degree of accountability required between Boisjoly's position and that of other Directors of Food Services will demand more factual detail in this case than is necessary at the pleading stage. All that is needed at this stage is "sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal." *Id*. at 256 (internal citations and quotation marks omitted). Here, the amended complaint acknowledges that Boisjoly's male counterparts "managed larger budgets" than she "because their facilities had additional beds," ECF No. 16 ¶ 42, but goes on to explain that this did not make the responsibilities of her male counterparts any "more intensive," *id*. ¶ 43, because her male counterparts were supported by more staff and dietary workers.[2]

This case is different from *E.E.O.C.* where the pleadings[3] merely stated that male and female attorneys had "the same job code," required similar "experience, training, education, or ability," and had the capacity to call on "problem-solving and analytical skills" and "professional judgment." 768 F.3d at 256-57. In that case, the court upheld the dismissal of the EPA claim because the party failed to "allege *any* facts concerning the attorneys' actual job duties." *Id.* at 249. "Job codes . . . say nothing of actual job duties," and the allegations there did "nothing to elucidate the skills or effort demanded of the [positions]." *Id.* at 258. The court gave examples of things that would qualify as facts about actual job duties: "whether the attorneys handled complex commercial matters or minor slip-and-falls, negotiated sophisticated lease and financing arrangements or responded to employee complaints, conducted research for briefs or drafted

---

[2] Ryders argues that this explanation indicates that "her male comparators had greater supervisory responsibilities than she did," ECF No. 19 at 9, but that is not the only reasonable inference one could draw from Boisjoly's allegation about differing levels of staff support. The complaint does not allege that the Food Service Directors at all Ryders' facilities were responsible for supervising all staff and dietary workers. Because the Court must draw reasonable inferences in Boisjoly's favor at this stage, the Court infers that the male counterparts at other facilities with greater staff support received assistance from other departments or that a human resources manager or similar employee actually supervised the additional staff.

[3] The court considered the pleadings and interrogatory responses which were treated as a functional amendment to the complaint. *E.E.O.C.*, 768 F.3d at 252.

7

multimillion-dollar contracts." *Id.* at 257. *See also Corpes v. Walsh Constr. Co.,* 2015 WL 5331725, at *2 (D. Conn. Sept. 14, 2015) (denying motion to dismiss EPA claim when party pleaded 16 specific job duties required of both positions).

Here, Boisjoly has alleged specific facts indicating that the jobs entailed common duties, namely that they all involved: (1) meeting with residents; (2) placing food orders; (3) ensuring that such orders remained within the budget; (4) staffing the food service department; (5) scheduling food services workers; (6) coordinating with other employees to serve residents; and (7) ensuring that food services were in compliance with regulations. ECF No. 16 ¶¶ 38, 39. These facts are similar in specificity to the actual job duties described in *E.E.O.C.*; they are not just bland generalizations. At the motion to dismiss stage, these factual allegations are sufficient to satisfy the "substantially equal" standard.

B.  Same Establishment

The EPA prohibits wage discrimination on the basis of sex between employees "within any establishment in which such employees are employed." 29 U.S.C. § 206(d)(1). "Establishment" refers to "a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business. Accordingly, each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). In addition:

> [U]nusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.

29 C.F.R. § 1620.9(b).

Ryders argues "that [Boisjoly] and her male comparators do not work within the same 'establishment.'" ECF No. 19 at 10. Ryders further states that "[i]n this case, 'unusual circumstances' are not present," because, among other reasons, Boisjoly does not claim to have been assigned "to any other facility at any time during her employment." *Id.* at 11-12.

But "[d]etermining the existence of such unusual circumstances is a fact-intensive assessment." *Fila v. State Univ. of New York*, 2022 WL 4379502, at *2 (N.D.N.Y. Sept. 22, 2022) (internal citations and quotation marks omitted). "Accordingly, courts have been loath to make such a determination, one way or another, without the benefit of complete discovery." *Id.* Numerous other courts have refused to decide whether such unusual circumstances are present prior to completion of discovery. *See, e.g., Finefrock v. Five Guys Operations, LLC*, 2017 WL 1196509, at *3 (M.D. Pa. Mar. 31, 2017); *Liebesman v. Competitor Grp., Inc.*, 2015 WL 2195093, at *4 (E.D. Mo. May 11, 2015); *D'Alema v. Appalachain Heritage Communities,* 1991 WL 93086, at *3 (N.D. Ga. Apr. 11, 1991); *see also Corpes*, 2015 WL 5331725, at *6 (denying motion to dismiss on "unusual circumstances" issue).

There are several factors that bear on whether unusual circumstances have been met, and frequently interchanging work locations is only one of those factors. 29 C.F.R. § 1620.9(b). Boisjoly alleges that "Ryders is a central administrative unit that hires employees, sets wages, and assigns the location of employment for its employees." ECF No. 16 ¶ 125. This is enough at the pleadings stage to allow her to take discovery to prove whether unusual circumstances are present.

C.  <u>CEPA vs EPA</u>

For cases arising prior to Oct 1, 2021, "[c]laims brought pursuant to the Connecticut Equal Pay Act are analyzed under the same standard as the Federal Equal Pay Act." *Morse v.*

*Pratt & Whitney*, No. 3:10-CV-01126 (JCH), 2013 WL 255788, at *11 (D. Conn. Jan 23, 2013).[4] Since I deny the motion to dismiss the EPA claim in Count 10, I also deny the motion to dismiss the CEPA claim in Count 11.

## V. **CONCLUSION**

For the reasons above, I DENY Ryder's motion to dismiss (ECF No. 18) as to Counts 10 and 11 of the amended complaint.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         November 29, 2022

---

[4] Both parties concede that this is the case in their briefs. ECF No. 19 at 13-14; ECF No. 23 at 10.